79. Between 2000 and 2001 Signalert made more than 50 round trips in the Growth Stock Fund and more than 50 round trips in the Young Investor Fund. Between February and August 2001 Signalert made 20 rounds trips in the Young Investor Fund. Between February and December 2001 Signalert made 20 round trips in the growth Stock Fund.

80. Signalert also market-timed the Acorn Fund, Galaxy Equity Value Fund, Galaxy Growth & Income Fund, and Stein-Roe Income Fund, making at least 15 round trips in the Acorn Fund between March 2001 and February 2003, 8 round trips in the Stein Roe Income Fund in November 2001, 23 round trips in the Galaxy Equity Fund, and 25 round trips in the Galaxy Growth & Income Fund between February 2001 and January 2002.

**Alan Waldbaum**

81. Defendant Alan Waldbaum ("Waldbaum") entered into an agreement with Columbia Distributor under which he was permitted to make 10 round trips per year in the Columbia Tax Exempt Fund, a municipal bond fund, if he moved less than $5 million at a time and always kept at least $2 million in the fund. The Portfolio Manager for the fund approved the agreement.

82. Waldbaum made 10 round trips between November 2002 and October 2003.

**Tandem Financial Services, Inc.**

83. Defendant Tandem Financial Services, Inc. ("Tandem") entered an agreement with Columbia Distributor, with the approval of Defendant John Doe 1

(Columbia Distributor's Senior Vice President), permitting Tandem to make an unlimited number of trades in one or more of the Columbia Funds.

84.  Tandem made over 100 round trips in the Columbia Tax Exempt Fund between February 2000 and September 2003.

## COLUMBIA DISTRIBUTOR ACTIVELY OBSTRUCTED EFFORTS TO PREVENT TIMING

85.  Columbia Distributor's executives and employees prevented others from interfering with the Timer Defendants' market timing activities:

a)  In March 2001, John Doe 1, Columbia Distributor's Senior Vice President, caused a Columbia Services manager responsible for market timing to telephone a portfolio assistant for the Acorn International Fund and tell her that it was "inappropriate" for her to take any direct action to stop Ilytat from market timing.

b)  Columbia Services then put Ilytat on a list of "Authorized Accounts for Frequent Trading" against which no action was to be taken.

c)  Defendant John Doe 1 also intervened when the Portfolio Manager for the Acorn International Fund complained about and tried to stop Ilytat's market timing.

d)  In 2002, Defendant John Doe 4, Columbia Distributor's Managing Director for National Accounts, intervened to reverse a stop placed Ilytat's trading by Columbia Services.

e)  In 2003, a Columbia Distributor's sales manager intervened when Columbia Services tried to stop Tandem from market-timing the Tax Exempt Fund. Tandem was allowed to continue timing through October 2003.

## COLUMBIA DISTRIBUTOR, WAM, AND COLUMBIA ADVISOR DIRECTLY BENEFITTED FROM MARKET-TIMING

86. Because WAM and Columbia Advisor receive advisory fees based on total assets under management in the Columbia Acorn Funds and the Non-Acorn Columbia Funds, respectively, it served their interests to obtain the largest possible investment in a fund. Therefore, both WAM and Columbia Advisor benefited directly from the market-timing agreements with the Timer Defendants.

87. Columbia Distributor received revenue and its executives were compensated based on the total amount of assets they caused to be invested in the funds. As a result, Columbia Distributors directly benefited from placing timer money in the funds.

## SUPERVISORY RESPONSIBILITY

88. Columbia Distributor is responsible for and has power to supervise the activities of the John Doe defendants by virtue of its position as the employer of those defendants.

89. The Acorn Trustees have supervisory responsibility for the Columbia Acorn Funds, including responsibility for supervising the activities of Columbia Distributor, Columbia Fund Services, and WAM.

90. CMG, by virtue of its position as controlling parent of the Advisor Defendants, Columbia Distributor, and Columbia Services, is responsible for and has power to supervise those entities.

91. Fleet Bank by virtue of its position as controlling parent of CMG is responsible for and has power to supervise CMG, the Advisor Defendants, Columbia Distributor, and Columbia Services.

92. FleetBoston, by virtue of its position as the ultimate parent of the Columbia Defendants, has ultimate responsibility and power to supervise the Columbia Defendants.

## DAMAGES

93. The events described in this Complaint have had and will have a series of deleterious effects on the Columbia Funds, including but not limited to loss of confidence of the investing public in the integrity and management of the Columbia Funds, resulting in outflow from the Columbia Funds causing the Columbia Funds' NAV to decline and the market value of the Funds to decline.

94. As a result of Defendants' misconduct, the Columbia Funds are exposed to significant regulatory scrutiny and to suit by investors for losses, at a minimum, causing the Columbia Funds to incur unnecessary direct and indirect investigatory, litigation and administrative costs, and potentially resulting in awards, judgments or settlements against the Columbia Funds. The SEC brought an enforcement action against Columbia Distributor and Columbia Advisor on February 24, 2004 relating to the market-timing conduct described in this complaint. The New York Attorney General initiated a similar action on the same day.

## DEMAND EXCUSED ALLEGATIONS

95. The Plaintiff has not made demand upon the Acorn Trustees to bring an action against the Defendants, and other culpable parties to remedy such wrongdoing alleged in this Complaint because:

    (a) Demand is excused because no such demand is required for the Plaintiff to assert a federal claim under Section 36(b) of the Investment Company

Act, 15 U.S.C. § 80a-35(b), for breach of fiduciary duty in connection with the compensation and other payments paid to the Defendants.

(b) Demand is also excused because the unlawful acts and practices alleged herein are not subject to the protection of any business judgment rule and could not be ratified, approved, or condoned by disinterested and informed trustees under any circumstances.

(c) Demand is also excused because the unlawful acts and practices alleged herein involve self-dealing on the part of the Defendants, who manage and control the day-to-day affairs of the Columbia Funds.

(d) Demand upon the Trustee Defendants, who are Trustees of the Columbia Acorn Fund Trust, is also excused because the Trustees of the Columbia Acorn Trust were retained by management of CMG, and thus owe their positions as well as their loyalties to them and lack sufficient independence to exercise business judgment.

(e) Finally, demand is excused because such demand would be futile. The unlawful acts and practices alleged herein have been the subject of an intense investigation by the Securities and Exchange Commission and New York Attorney General Eliot Spitzer culminating in a two civil complaints filed February 24, 2004. Consequently, the Acorn Trustees and each of them already have been fully informed of the wrongdoing alleged herein and have failed and refused to take appropriate action to recover damages for the Columbia Funds. No shareholder demand could or would prompt the Trustees to take action if the SEC's and Attorney General Spitzer's investigations and complaints did not.

25

## COUNT I
## VIOLATION OF SECTION 36(a) OF THE INVESTMENT COMPANY ACT AND FOR CONTROL PERSONAL LIABILITY UNDER THE INVESTMENT COMPANY ACT
### (Against the Columbia Defendants [Except Columbia Fund Services], the Advisor Defendants, the John Doe Defendants, and the Acorn Trustees)

96. Plaintiff incorporates by reference all paragraphs above.

97. The Columbia Funds and each of them are registered investment companies.

98. WAM and Columbia Advisor are investment advisors under Section 36(a) as that term is defined in Section 2 of the ICA.

99. Columbia Distributor and John Does 1-4 act as the principal underwriter for the Columbia Funds under Section 36(a) as defined in Section 2 of the ICA.

100. The Acorn Trustees are directors pursuant to Section 36(a) as that term is defined in Section 2 of the ICA.

101. FleetBoston, Fleet Bank, and CMG by virtue of their ownership and position and responsibilities for managing and directing the activities of Columbia Distributor, WAM, Columbia Advisor, and John Does 1-4, are controlling persons pursuant to Section 48 of the Investment Company Act of 1940 ("ICA").

102. Pursuant to Section 36(a) of the ICA, 15 U.S.C. §80a-35(a), FleetBoston, Fleet Bank, WAM, Columbia Advisor, Columbia Distributor, John Does 1-4, and the Acorn Trustees owe to the Columbia Funds and their shareholders the fiduciary duties of loyalty, candor and due care.

103. Each of FleetBoston, Fleet Bank, WAM, Columbia Advisor, Columbia Distributor, John Does 1-4, and the Acorn Trustees owe to the Columbia Funds pursuant

to Section 36(a), breached his/her or its fiduciary duty to the Columbia Funds by the acts alleged in this complaint.

104. As a direct and proximate result of the wrongful conduct by FleetBoston, Fleet Bank, WAM, Columbia Advisor, Columbia Distributor, John Does 1-4, and the Acorn Trustees, the assets and value (including the NAV) of the Columbia Funds have been reduced and diminished and the corporate assets of the Columbia Funds have been wasted and they are liable.

### COUNT II
### VIOLATION OF SECTION 36(b) OF THE INVESTMENT COMPANY ACT
### (Against the Columbia Defendants, the Advisor Defendants, and the John Doe Defendants)

105. Plaintiff incorporates by reference all paragraphs above.

106. The Columbia Funds and each of them are registered investment companies.

107. WAM and Columbia Advisor are each investment advisors for the Columbia Funds as that term is defined in Section 2 of the ICA.

108. The Columbia Defendants and the John Doe Defendants are affiliated persons of WAM and Columbia Advisor under Section 36(b) as that term is defined in Section 2 of the ICA.

109. Pursuant to Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), the investment advisor of a mutual fund owes to the mutual fund and its shareholders a fiduciary duty with respect to its receipt of compensation for services or payments of any material nature, paid by the mutual fund or its shareholders to such investment advisor or any affiliated person.

110. Pursuant to Section 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35(b), mutual fund shareholder may bring a civil action against an investment advisor or any affiliated person who has breached his or its fiduciary duty concerning such compensation or other payments.

111. As alleged above in this Complaint, the Advisor Defendants, the Columbia Defendants, and the John Doe Defendants breached his or its fiduciary duty with respect to the receipt of compensation or other payments from the Columbia Funds or their shareholders.

112. By virtue of the foregoing, the Advisor Defendants, the Columbia Defendants, and the John Doe Defendants have violated Sections 36(a) and 36(b) of the Investment Company Act, 15 U.S.C. § 80a-35.

113. As a direct and proximate result of the wrongful conduct of the Advisor Defendants, the Columbia Defendants, and the John Doe Defendants, the assets and value (including the NAV) of the Columbia Funds have been reduced and diminished and the corporate assets of the Columbia Funds have been wasted and the said defendants are liable.

## COUNT III
## VIOLATION OF SECTION 206 OF THE INVESTMENT ADVISORS ACT OF 1940
### (Against the Advisor Defendants)

114. Plaintiff incorporates by reference all paragraphs above.

115. This Count II is based on Section 215 of the Investment Advisors Act of 1940, 15 U.S.C. § 8b-15 ("IAA").

116. WAM was the investment advisor to the Acorn Funds pursuant to the IAA and as such was a fiduciary under the IAA and held to the standards of behavior defined in Section 206 of the IAA.

117. Columbia Advisor was the investment advisor to the Non-Acorn Columbia Funds pursuant to the IAA and as such was a fiduciary under the IAA and held to the standards of behavior defined in Section 206 of the IAA.

118. WAM breached its fiduciary duties to the Acorn Funds by engaging in the acts described in this Complaint which were acts, practices and courses of business that were knowingly, deliberately and recklessly fraudulent, deceptive and manipulative and a breach of the fiduciary duties defined in Section 206 of the IAA.

119. Columbia Advisor breached its fiduciary duties to the Non-Acorn Columbia Funds by engaging in the acts described in this Complaint which were acts, practices and courses of business that were knowingly, deliberately and recklessly fraudulent, deceptive and manipulative and a breach of the fiduciary duties defined in Section 206 of the IAA.

120. WAM is liable to the Acorn Funds and their shareholders as a direct participant in the wrongs alleged in this Count III. WAM has and had authority and control over the Acorn Funds and their operations including the ability to control the manipulative and illegal acts described in this Complaint.

121. Columbia Advisor is liable to the Non-Acorn Columbia Funds and their shareholders as a direct participant in the wrongs alleged in this Count III. Columbia Advisor has and had authority and control over the Non-Acorn Columbia Funds and their

operations including the ability to control the manipulative and illegal acts described in this Complaint.

122. As a direct and proximate result of said defendants' wrongful conduct as alleged in this Complaint, the assets and value (including NAV) of the Columbia Funds have been reduced and diminished and the corporate assets of the Columbia Funds have been wasted and WAM and Columbia Advisor have collected illegal profits and fees.

### COUNT IV
### VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
### (Against the Advisor Defendants and the Timer Defendants)

123. Plaintiff incorporates by reference all paragraphs above.

124. WAM, Columbia Advisor and the Timer Defendants directly engaged in a common plan, scheme and unlawful course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business and manipulative devices, which operated as a fraud and deceit on the Columbia Funds. The purpose and effect of the scheme, plan, and unlawful course of conduct was, among other things, to deceive and harm the plaintiff and cause the Columbia Funds to sell securities at artificially deflated values as described in the Complaint.

125. The Columbia Funds have suffered damages as a result of the wrongs herein alleged in an amount to be proved at trial.

126. By reason of the foregoing, said defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to the Columbia Funds for damages which they suffered in connection with the purchase or sale of securities in those funds.

## COUNT V
## VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
### (Against the Columbia Defendants, the John Doe Defendants, and the Acorn Trustees)

127. Plaintiff incorporates by reference all paragraphs above.

128. The Columbia Defendants, the John Doe Defendants, and the Acorn Trustees each acted as a controlling person of WAM and Columbia Advisor within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their active participation in and knowledge of WAM's and Columbia Advisor's day-to-day operations, the said Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the WAM and Columbia Advisor and the Columbia Funds. These Defendants had unlimited access to records of transactions and had the ability to prevent the Columbia Funds from engaging in the schemes and artifices to defraud complained of in this Complaint.

129. The Columbia Defendants, the John Doe Defendants, and the Acorn Trustees had direct and supervisory involvement over the day-to-day operations of WAM, Columbia Advisor, and the Columbia Funds and, therefore, are presumed to have had and did have the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

130. By virtue of their position as controlling persons the Columbia Defendants, the John Doe Defendants, and the Acorn Trustees are liable pursuant to Section 20(a) of the Exchange Act.

131. The Acorn Trustees' conduct constituted willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his or her office.

132. As a direct and proximate result of their wrongful conduct, the Columbia Funds suffered damages in connection with the acts and practices alleged in this Complaint.

## COUNT VI
## COMMON LAW BREACH OF FIDUCIARY DUTY
### (Against the Columbia Defendants, the John Doe Defendants, and the Advisor Defendants)

133. Plaintiff incorporates by reference all paragraphs above.

134. The Columbia Defendants, the John Doe Defendants, and the Advisor Defendants and each of them owed to the Columbia Funds and their shareholders the duty to exercise due care and diligence, honesty and loyalty in the management and administration of the affairs of each Columbia Fund and in the use and preservation of its property and assets, and owed the duty of full and candid disclosure of all material facts thereto. Further, said defendants owed a duty to each of the Columbia Funds and their shareholders not to waste the funds' corporate assets and not to place their own personal self-interest above the best interest of the funds and their shareholders.

135. To discharge those duties, the Columbia Defendants, the John Doe Defendants, and the Advisor Defendants were required to exercise prudent supervision over the management, policies, practices, controls, and financial and corporate affairs of the Columbia Funds.

136. As alleged in this Complaint, each of the Columbia Defendants, the John Doe Defendants, and the Advisor Defendants breached his or its fiduciary duty by receiving excessive compensation or payments in connection with the timing schemes and other manipulative schemes as alleged in this Complaint.

137. As alleged above, each of the Columbia Defendants, the John Doe Defendants, and the Advisor Defendants also breached his or its fiduciary duty to preserve and not to waste the assets of the Columbia Funds and each of them by permitting or incurring excess charges and expenses to the Columbia Funds in connection with the Timer Defendants' timing scheme.

138. As a direct and proximate result of their wrongful conduct, the Columbia Funds suffered damages in connection with the acts and practices alleged in this Complaint.

## COUNT VII
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
### (Against the Timer Defendants)

139. Plaintiff incorporates by reference all paragraphs above.

140. The Timer Defendants knew of the existence and extent of the fiduciary duty between the Columbia Defendants, the John Doe Defendants, and the Advisor Defendants, and the Columbia Funds (for purposes of this Count the "Fiduciary Defendants"). The Timer Defendants knew that the acts of "timing" made by them on the Columbia Funds were manipulative devices and knew that these acts were a breach of the fiduciary duties owed to the Columbia Funds by the Fiduciary Defendants. The Timer Defendants maliciously, without justification and through unlawful means, aided and abetted and conspired with the Fiduciary Defendants in breaching their fiduciary

duties and provided substantial assistance and encouragement to the Fiduciary Defendants in violating their fiduciary duties in the manner and by the actions described in this Complaint.

141. The Timer Defendants are jointly and severally liable with the Fiduciary Defendants to the Columbia Funds for damages proximately caused by their aiding and abetting as alleged herein.

142. As a direct and proximate result of the Timer Defendants' wrongful conduct, the assets and value (including the NAV) of the Columbia Funds have been reduced and diminished and the corporate assets of the funds have been wasted.

## COUNT VIII
## CIVIL CONSPIRACY
## (Against All Defendants)

143. Plaintiff incorporates by reference all paragraphs above.

144. The Defendants entered into an agreement or agreements or combinations with each other to accomplish by common plan the illegal acts described in this Complaint and by their actions demonstrated the existence of an agreement and combination.

145. The Defendants by their actions have manifested actual knowledge that a tortious or illegal act or acts was planned and their intention to aid in such act or acts.

146. The Acorn Trustees' conduct constituted willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his or her office.

147. The Defendants maliciously and intentionally conspired, combined and agreed with one another to commit the unlawful acts alleged in this Complaint or to

commit acts by unlawful means causing injury to Plaintiff and proximately causing injury and damages to the Plaintiff for which they are jointly and severally liable.

148. The Columbia Funds have suffered damages as a result of the wrongs and the conspiracy to commit such wrongs as alleged in the Complaint in an amount to be proved at trial.

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. Removing each of the Trustees of each Columbia Acorn Fund named in this Complaint and replacing them with independent Trustees,

B. Rescinding the management contracts for the Columbia Funds with WAM and Columbia Advisor and replacing the managers,

C. Awarding monetary damages against all of the Defendants, jointly and severally, in favor of the Columbia Funds, for all losses and damages suffered as a result of the wrongdoings alleged in this Complaint, including punitive damages where appropriate, together with interest thereon,

D. Ordering Defendants to disgorge all profits earned on unlawful trading and all management fees earned during the period of such trading,

E. Awarding Plaintiff the fees and expenses incurred in this action, including reasonable allowance of fees for plaintiff's attorneys, and experts,

F. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all issues so triable.

DEUTSCH WILLIAMS BROOKS
DERENSIS & HOLLAND, P.C.

_____
Steven J. Brooks, BBO# 059140
Robert D. Hamilton, BBO# 552637
99 Summer Street
Boston, MA 02110

(617) 951-2300

Counsel:

CHIMICLES & TIKELLIS LLP

Nicholas E. Chimicles
Denise Davis Schwartzman
Timothy N. Mathews
361 W. Lancaster Avenue
Haverford, PA 19041
(610) 642-8500

Dated: March 23, 2004


DWLIB 154041v1
8334/00

36

## VERIFICATION OF PLAINTIFF

Edward I. Segel and Iris Segel, the plaintiffs in the above styled action declare:

We purchased shares of the Columbia Acorn Fund in beginning Jan "00" and continue to hold such shares. We reviewed the Complaint and authorized counsel to file the Complaint. This action is not collusive to confer jurisdiction on the United States, which it would not otherwise have.

We declare the above to be true under the penalty of perjury.

Dated: 3/13/04

_Edward I. Segel_
Edward I. Segel

_Iris Segel_
Iris Segel